IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLN CAPITAL FUNDING LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SCHWAN'S FOOD SERVICE, INC., ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) | Civil Case No. 08 C 4213 <br><br> Judge Joan H. Lefkow <br><br> Magistrate Judge Mason |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION**

**INTRODUCTION**

This case should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff BLN Capital Funding, LLC ("BLN") sued the wrong party. The named defendant, Schwan's Food Service, Inc. ("Schwan's Food Service"), has no obligation to pay BLN because it does not have a contract with BLN and has no other duty or obligation to BLN. In the alternative, the Court should stay the case and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). BLN alleges in its complaint that it purchased a third party's accounts receivable, including certain invoices between the third party and Schwan's Food Service. The invoices purportedly assigned to BLN arise from a contract that contains a binding arbitration clause. Under the Uniform Commercial Code and applicable law, BLN, as the purported assignee of the accounts receivable arising from this contract, stands in the shoes of the assignor and is therefore required to arbitrate any dispute concerning the invoices in Minneapolis, Minnesota.

## STATEMENT OF FACTS[1]

On or around July 17, 2006, Schwan's Global Supply Chain, Inc. ("Schwan's Global"), a Minnesota company, entered into a supply agreement with Chef Fresh Foods, LLC ("Chef"), a Wisconsin company, under which Chef agreed to supply Schwan's Global with certain food products (hereinafter "Supply Agreement"). *See* Supply Agreement (Exhibit A to Exhibit 2). The Supply Agreement mandates that any disputes relating to the Agreement be resolved by binding arbitration in Minneapolis, Minnesota:

> 21. **Arbitration**. *Any dispute between the parties arising under or in connection with this Agreement shall be resolved by binding arbitration conducted by the American Arbitration Association under its rules for expedited commercial arbitration at Minneapolis, Minnesota*. The decision of the arbitrators is final and binding on all parties. The arbitrators may issue appropriate orders as well as award monetary (but not exemplary or punitive) damages.

*Id.*, ¶ 21 (emphasis added). The Supply Agreement also provides that the Agreement "will be governed by and construed in accordance with the laws of the State of Minnesota, without regard to its conflicts of law rules." *Id.*, ¶ 23. Defendant Schwan's Food Service, Inc., an entity that is related to, but separate from Schwan's Global, was not a party to the Supply Agreement. *See* Affidavit of Douglas Olsem ("Olsem Aff."), ¶ 3 (Exhibit 2).

On or about February 1, 2007, Chef purportedly entered into an Accounts Receivable Purchase, Inventory, Purchase Order and General Security Agreement with BLN whereby Chef agreed to "assign and sell to BLN as absolute owner, with recourse, [its] entire interest in all of [its] present and future Receivables" (hereinafter "Factoring Agreement"). *See* Complaint, ¶ 4 (Exhibit 1); Factoring Agreement, ¶ 2.3 (Exhibit A to Exhibit 1). Under the Factoring

---

[1] For purposes of this motion only, Defendant accepts as true the factual allegations contained in the complaint.

2

Agreement, Chef "further grants, conveys, transfers, sells and assigns to BLN . . . all [Chef's] contracts and contract rights." Factoring Agreement, ¶ 2.1 (Exhibit A to Exhibit 1). There is no allegation or evidence that either Chef or BLN asked Schwan's Global to consent to the assignment of the invoices due under the Supply Agreement. The Factoring Agreement is to be "governed by and construed in accordance with the laws of the State of Illinois and the laws of the United States of America applicable to transactions in the State of Illinois." *Id.*, ¶ 6.5.

On or about June 13, 2008, BLN filed a Verified Complaint in the Circuit Court of Cook County, Illinois, naming Schwan's Food Service, Inc. as the defendant. *See generally* Complaint (Exhibit 1). In the Complaint, BLN alleges that it notified Schwan's Food Service, Inc. of the assignment of Chef's invoices to BLN and that Schwan's Food Service, Inc. is obligated to pay BLN a sum of $165,057.20 on the invoices purportedly assigned.

Schwan's Food Service, Inc. timely removed the case to this Court on July 24, 2008 based on the Court's diversity jurisdiction.

## ARGUMENT

**I.    BLN'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

A court should dismiss a complaint for failure to state a claim upon which relief may be granted when the claim does not state a cognizable cause of action under the substantive law. *See* Fed. R. Civ. P. 12(b)(6); *see also Khan v. Gallitano*, 180 F.3d 829, 832 (7th Cir. 1999). On a Rule 12(b)(6) motion, the Court may consider, in addition to the pleadings, authenticated copies of key documents upon which the allegations in the Complaint are based. *See Swanson v. Bank of America, N.A.*, -- F. Supp.2d --, 2008 WL 2738083, at *2 (N.D. Ill. July 15, 2008). The Court may also consider extrinsic documents where the documents are implicitly referenced within the

3

complaint. *Id.* (considering, on a Rule 12(b)(6) motion, a credit card term agreement that was not referenced in the complaint, but that was "fundamental to" plaintiff's allegations).

In its Verified Complaint, BLN names "Schwan's Food Service, Inc." as the defendant. *See generally* Complaint (Exhibit 1). As the Supply Agreement clearly shows, however, the party obligated to pay Chef was "Schwan's Global Supply Chain, Inc.," an entity separate and distinct from defendant Schwan's Food Service, Inc. *See* Supply Agreement (Exhibit A to Exhibit 2); Olsem Aff., ¶ 3 (Exhibit 2). Thus, Defendant Schwan's Food Service, Inc. had no obligation to pay Chef under the Supply Agreement, and therefore could have had no obligation to pay BLN under any purported assignment of Chef's invoices. Accordingly, BLN has failed to state a claim against the named defendant, Schwan's Food Service, Inc., and the Complaint should be dismissed.

**II.     IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED AND BLN SHOULD BE COMPELLED TO ARBITRATE ITS DISPUTE IN MINNESOTA.**

Alternatively, the Court should stay the case and compel BLN to arbitrate its dispute in Minneapolis, Minnesota. The Supply Agreement provides that "*[a]ny dispute between the parties arising under or in connection with this Agreement* shall be resolved by binding arbitration." Supply Agreement, ¶ 21 (Exhibit A to Exhibit 2) (emphasis added).

Because this case involves interstate commerce, the FAA controls whether BLN is obligated to arbitrate this dispute, as provided under the Supply Agreement. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In enacting the FAA, "Congress declared a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S.

4

1, 10 (1984).[2]  The FAA expressly states that upon being satisfied that the issue involved in a suit brought in federal court is referable to arbitration, the court "*shall* . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).  The Supreme Court has further stated that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25.

Before compelling arbitration, the Court must engage in a limited review to determine if (1) a valid agreement to arbitrate exists and (2) that agreement covers the underlying dispute. *Lohman v. Cap Mark, Inc.*, Case No. No. 03 C 8965, 2004 WL 1157836, at *1 (N.D. Ill. May 24, 2004) (citing *We Care Hair Dev., Inc. v. Engen,* 180 F.3d 838, 844 (7th Cir.1999)).  In this limited review, the Court looks to state contract law to determine the scope and meaning of an arbitration clause, while giving due regard to the federal policy favoring arbitration.  *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475 (1989).

While there is no contract between any Schwan's entity and BLN, Article 9 of the Uniform Commercial Code, which governs the sale of Chef's accounts to BLN, provides that as the purported assignee of the right to payment under the Supply Agreement, BLN is subject to the arbitration provision in the underlying contract between Chef and Schwan's Global.  *See Systran Fin. Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp.2d 500, 505 (N.D. Ohio

---

[2]  Minnesota and Illinois courts also strongly favor arbitration as an alternative to litigation. *See, e.g.*, *Casablanca Trax, Inc. v. Trax Records, Inc.*, --- N.E.2d ----, 2008 WL 2346088, at **4-5 (Ill. Ct. App. June 6, 2008); *Minn. Teamsters Public & Law Enforcement Employees' Union, Local No. 320 v. County of St. Louis*, 611 N.W.2d 355, 358 (Minn. Ct. App. 2000).

2003) (noting that a sale of accounts is governed by Article 9).[3] Under Article 9, unless the account debtor (in this case, Schwan's Global) has made an enforceable agreement *not* to assert defenses or claims arising out of its contract with the assignor (here, Chef), the rights of the assignee (BLN) "are subject to *all the terms of the contract* between the account debtor and the assignor and any defense or claim arising therefrom." U.C.C. § 9-404(1) (emphasis added).[4] Thus, as the purported assignee of Chef's accounts receivable, BLN "stands in the shoes of the assignor and is subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created." *Oxford Comm. Funding, LLC v. Cargill, Inc.*, Case No. 00 C 4996, 2002 WL 31455989, at *3 (N.D. Ill. Oct. 31, 2002) (internal quotation marks and citation omitted); *see also Delacy Invs., Inc. v. Thurman*, 693 N.W.2d 479, 484 (Minn. Ct. App. 2005) (citing Restatement (Second) of Contracts § 336, cmt. b and revised U.C.C. § 9-404 for the proposition that "an assignor can assign only what he has and is subject to limitations imposed by the terms of that contract creating the right") (internal quotation marks omitted). Here, a "term[] of the agreement between the account debtor and assignor" is the arbitration agreement and there is no allegation or evidence that Schwan's

---

[3]  While the Supply Agreement is governed by Minnesota law and the Factoring Agreement is governed by Illinois law, both Minnesota and Illinois have adopted Article 9. Accordingly, there is no conflict of law, and the Court may apply either law, as well as other law interpreting Article 9, to reach the same result. *See Systran*, 252 F. Supp.2d at 503 n.2; *see also Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006) ("Illinois generally follows the majority interpretation of UCC provisions, in order to serve the underlying UCC policy of 'mak[ing] uniform the law among the various jurisdictions'") (quoting 810 Ill. Comp. Stat. 5/1-102(2)(c)); *State Bank of Young America v. Vidmar Iron Works, Inc.*, 292 N.W.2d 244, 249 n.2 (Minn. 1980) (recognizing, pursuant to Minn. Stat. § 645.22, that Minnesota's UCC should be interpreted consistently with that of other states to effectuate its purpose of creating uniformity among states).

[4]  Article 9 was revised in 2000. The pre-revised § 9-318 has now been renumbered § 9-404. Both Minnesota and Illinois have adopted § 9-404. *See* Minn. Stat. § 336.9-404; 810 Ill. Comp. Stat. 5/9-404.

Global consented not to enforce this agreement. Accordingly, BLN is subject to the agreement to arbitrate. *See Systran*, 252 F. Supp.2d at 506.

Even though BLN was purportedly assigned only the right to payments under the Supply Agreement, multiple courts applying U.C.C. § 9-404 have concluded that a finance assignee, such as BLN, is subject to an arbitration clause in the underlying contract between the account debtor (Schwan's Global) and the assignor (Chef) because arbitration is a contractual remedy, not an obligation. *See, e.g.*, *Systran*, 252 F. Supp.2d at 505; *Southeastern Penn. Transp. Auth. & Nat'l R.R. Passenger Corp. v. AWS Remediation, Inc.*, Case No. Civ. A. 03-695, 2003 WL 21994811 (E.D. Pa. Aug. 18, 2003) ("The right to arbitrate cannot be separated from the [] Receivables."); *GMAC Commer. Credit LLC v. Springs Indus., Inc.*, 171 F. Supp.2d 209, 214 (S.D.N.Y. 2001); *Banque de Paris et des Pays-Bas v. Amoco Oil*, 573 F. Supp. 1464, 1469 (S.D.N.Y. 1983) (concluding that "an assignee or other party whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract"); *Cone Constructors, Inc. v. Drummond Cmty. Bank*, 754 So.2d 779, 780-81 (Fla. App. 2000) ("where, as in the instant case, the assignee of the accounts receivable has brought suit against an account debtor to recover payments made to others that the assignee alleges were due to the assignee, the assignee is subject to the arbitration provision in the underlying contract").[5] These courts have compelled the finance assignee to proceed to the arbitration forum mandated in the underlying contract because an "assignment cannot alter a contract's bargained-for

---

[5] Minnesota and Illinois Courts likewise have held that "an account debtor may assert *any* defense that might have been asserted against the assignor," which suggests that these states would enforce an arbitration clause against a finance assignee like BLN. *See Delacy*, 693 N.W.2d at 485 (internal quotation marks and citations omitted); *Oxford*, 2002 WL 31455989, at *3 (interpreting revised § 9-404 to allow account debtor to assert a notice provision clause in the underlying contract as a defense because "it is a term of the Contract out of which [the] accounts receivables were created").

remedial measures, for then the assignment would change the very nature of the rights assigned." *GMAC*, 171 F. Supp.2d at 216.

Thus, BLN should be compelled to arbitrate its dispute, consistent with the arbitration clause in the Supply Agreement, in Minneapolis, Minnesota. The Supply Agreement provides that "*[a]ny dispute between the parties arising under or in connection with this Agreement* shall be resolved by binding arbitration." Supply Agreement, ¶ 21 (Exhibit A to Exhibit 2) (emphasis added). The accounts receivable upon which BLN seeks to collect arise out of the Supply Agreement. Because the dispute falls within the arbitration clause, and because BLN takes the accounts receivable subject to the arbitration remedy, the Court should stay the proceedings and compel BLN to arbitrate. *See Cone*, 754 So.2d at 780-81.

## CONCLUSION

For the foregoing reasons, Defendant Schwan's Food Service, Inc. respectfully requests that the Court dismiss the Complaint, or in the alternative, stay the proceedings and compel arbitration.

July 31, 2008

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/ Jennifer R. Riccolo*
Jennifer R. Riccolo
Counsel for Defendant

Jennifer R. Riccolo, ARDC No. 6283826
jriccolo@hinshawlaw.com
Hinshaw & Culbertson LLP
Suite 300, 222 North LaSalle Street
Chicago, IL 60601

8

Telephone:  (312) 704-3507
Facsimile:  (312) 704-3001

--and--

Thomas P. Swigert, ARDC No. 06230374
swigert.tom@dorsey.com
Gretchen A. Agee, ARDC No. 6282421
agee.gretchen@dorsey.com
Dorsey & Whitney LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Counsel for Schwan's Food Service, Inc.*